**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                    Criminal Action No. 04-CR-80875-DT
                                    HONORABLE DENISE PAGE HOOD

JAMES HEARD,

    Defendant.

_____/

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO SUPPRESS
AND REQUEST FOR EVIDENTIARY HEARING
and
MOOTING MOTION FOR DISCOVERY, NOTICE OF 404(B)
EVIDENCE, BRADY MATERIALS AND ADDITIONAL TIME**

**I.    BACKGROUND**

Defendant James Heard brought a Motion for Discovery, Notice of 404(B) Evidence, Brady Materials and a Motion to Suppress and Request for An Evidentiary Hearing seeking to suppress evidence seized in violation of his Fourth and Fifth Amendment rights under the United States Constitution. The parties had resolved the Motion for Discovery. The Government responded to the Motion to Suppress and an evidentiary hearing was held. The Court finds the evidence seized should be suppressed.

Defendant was charged in a four-count Indictment with: Possession of Cocaine Base with the Intent to Distribute, in violation of 21 U.S.C. §841(A)(1); Carrying a Firearm During and in Relation to a Drug Trafficking Crime, a violation of 18 U.S.C. §924(c)(1)(A); Felon in Possession of a Firearm, a violation of 18 U.S.C. §922(g); Possession of a Stolen Firearm, a violation of 18

U.S.C. §922(j).

## II. FINDING OF FACTS

Five witnesses testified at the evidentiary hearing: the two police officers who stopped the Defendant; the driver of the van; and two other passengers in the vehicle. Dean Muczynski, a Detroit police officer for six years, testified that he was on duty as a passenger in a marked scout car on the night of October 15, 2004. Officer Muczynski and his partner, Dawn Engle, were on traffic patrol in the Ninth Precinct, which he claims is a high crime area. As they were traveling on Gunston southbound, he claims to have seen a man on a porch of a house on the southwest corner of Maiden and Gunston, pointing to a van approaching the intersection. The police vehicle slowed to hear the man. Muczynski claims the man on the porch said that a man in a van had a ".44" pistol and pointed toward a van. Muczynski testified that he looked back at the intersection of Maiden and Gunston and observed the van on Maiden, proceed through the stop sign, across Gunston, without stopping, and traveling too fast. The police car proceeded to the next street, Barrett, making a left, and traveled back to Maiden catching up with the vehicle when it pulled into the driveway of a house on Maiden.

Muczynski testified that once in the driveway, persons exited the vehicle and went toward the house. There were also people coming out of the house. Muczynski later found out there was a birthday party taking place at the house. Muczynski exited his vehicle and asked the driver and front seat passenger to put their hands up. The driver raised his hands, but the passenger put one hand up and kept the other hand down in front of the belt area of his pants. The passenger ultimately raised both hands. A handgun was found under his waistband. After a search incident to his arrest a knotted plastic baggy with 18 ziplock bags was found in a green cigarette pack found in

2

Defendant's pocket. Muczynski also testified that Defendant made a statement about the gun and drugs and being on probation and having a "beef" with his neighbor. Muczynski testified that these statements were made before he had an opportunity to Mirandize the Defendant and were not in response to any questions Muczynski asked. These statements are not recorded in Muczynski's police report and Muczynski did not inform either the Agent in Charge or the Assistant United States Attorney of these statements until two weeks after the incident. Muczynski gave no reason for not including these statements in his police report, indicating that his PCR (preliminary complaint report) should indicate the basis for arrest but does not need "every detail."

The testimony of Engle mirrors that of Muczynski. Engle was the driver of the police vehicle and claims to have looked over her shoulder to see the van run through the stop sign across Gunston. She likewise claims that she had slowed, rolled down the window and heard the man on the porch on the corner of Maiden and Gunston point at the van and say "he's got a .44 pistol." Engle's testimony is that she activated the lights and siren when she decided to follow the van. The officers also testified that they called for backup because the people attending the birthday party appeared to be hostile. The driver was not given a ticket for disobeying the stop sign or for excessive speed.

Neither officer gave any explanation as to why they did not investigate the man on the porch to see if he was actually pointing at the van. Even after the incident no one returned to Maiden and Gunston to investigate. The officers also both testified that it was raining steadily on the evening in question, even though they claim the window was partially down and they could hear the man yelling about the gun.

A video tape was made of the officer's progress down Gunston. It is evident that the evening

3

was dark and rainy and that it was difficult to see. The video tape does not include the stop and arrest because the officers did not pull in the driveway of the house. The video does not evidence that the lights and siren of the police car were activated.

Marcus Angelo Holmes was the driver of the van stopped on the night in question. He testified that Defendant was arrested that night at 12125 Maiden where he and the passengers of his van were going to a party at his mother-in-law's house. Holmes testified that he received a call from Defendant to pick him up from an address on Faircrest. He picked up the Defendant and headed back to the party stopping first at a gas station. Holmes indicated that it was rainy. He further testified that he saw the police car pass Maiden in front of the van as he approached the stop sign. Holmes testified that he stopped at the stop sign and traveled to the house at 12125 Maiden at about 15-20 miles per hour. He stated the police car put on its lights as he pulled in the driveway. Holmes testified that the female officer went straight to Defendant and the male officer came up to him. Both had their guns drawn. Holmes also stated he was a convicted felon and had violated parole and was released ten days prior to the incident. He noted that he had not been watching his speedometer as he drove down Maiden and that he did not have a driver's license even though he had been driving since he was fourteen years old.

Junlan Cray and Cherita Cray, who are sisters, were passengers in the van that night. They testified that the passengers in the van had been picked up by Holmes, stopped at the gas station and were in route to a birthday party. They testified that the van stopped for the stop sign at Maiden and Gunston as the police car went by. They also stated that they traveled at a normal speed down Maiden to the house where they drove into the driveway. As they were getting out of the van, the officers pulled up and got out of their vehicle with their guns drawn.

4

## II.     ANALYSIS

Any seizure of a person must be supported by at least reasonable suspicion that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1 (1968). An individual "may not be detained even momentarily without reasonable, objective grounds for doing so. ..." *Florida v. Royer,* 460 U.S. 491, 498 (1983). The Supreme Court has recognized several exceptions to the Fourth Amendment's warrant and probable cause requirements for searches and seizures to protect police officers and the public from violence in circumstances where probable cause may be lacking. *Maryland v. Buie*, 494 U.S. 325, 331 (1990). "[P]rotection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). The Constitution "does not limit the government officers' rights to protect themselves from assault when fear is reasonably based on objective facts." *United States v. Kinney*, 638 F.2d 941, 944 (6th Cir. 1981). The Supreme Court has suggested that a stop based solely on a non-predictive anonymous tip generally does not support a *Terry* stop. *Alabama v. White,* 496 U.S. 325, 329 (1990). The Supreme Court held an anonymous tip indicating a person is carrying a gun is not, without more, sufficient to justify a police officer's stop and frisk of that person. *Florida v. J.L.,* 529 U.S. 266, 272 (2000).

Defendant claims that the officers had no reasonable suspicion that Defendant was involved in any criminal activity, therefore, the seizure of Defendant was unlawful. Defendant claims the "fruit" of the unlawful seizure must be suppressed, citing, *Wong Sun v. United States,* 371 U.S. 471 (1963).

In response, the Government claims that when the officers were on patrol, an individual

5

yelled that a person had a gun and pointed to a van. Muczynski looked back and observed the white van which he claims disregarded the stop sign on Maiden at Gunston and was traveling at a high rate of speed. The officers believed the driver of the van had disregarded the stop sign and followed the van to effectuate a traffic stop. The Government claims that it is well settled that "so long as [an] officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment," citing *United States v. McCully,* 21 F.3d 712 (6th Cir. 1993).

The officers claimed that after they observed the van disregarding the stop sign, they went around the next block and eventually followed the van up to the driveway of 12125 Maiden. There, the occupants in the vehicle hurriedly exited the van from the passenger side in an attempt to enter the residence. The officers ordered two occupants to stop and raise their hands. The driver complied, but Defendant only raised one hand, the other hand remaining on his waistband. Engle advised Defendant to raise both hands again but Defendant failed to comply. Engle thereafter obtained custody of Defendant. The driver was not issued a citation for disregarding the stop sign.

The Government argues that the officers could permissibly briefly detain the occupants of the van and conduct a pat down for weapons because of the traffic infraction the officers observed. In addition, the Government claims the officers had a reasonable suspicion that the individuals were engaged in criminal activity based on: the "tip" from an individual on the street that someone had a gun and who seemed to point toward the van; the driver of the van having violated a traffic law; the occupants of the vehicle hurriedly exiting from the van and attempting to run into the residence; and, Defendant's failure to comply with the officers' order to raise both of his hands. The Government asserts Engle's seizure and pat down of Defendant for weapons was reasonable for the

officers' own safety.

Viewing these facts including the Court's review of the videotape along with the testimony of the witnesses in the light most favorable to the Government, the Court finds that the officers had no reasonable suspicion or probable cause to stop the van or detain and search any of the passengers therein. The videotape reveals a rainy and dark night with some street lighting. The corner of Maiden and Gunston is no more well lit than any other area on the video tape. The officers' ability to see was very diminished. The officers' testimony was that they saw a man pointing from the porch of a house on Maiden at the corner of Gunston. The man was facing toward them. He was apparently pointing toward the van or across the street. The Court finds it possible but not likely that the officers could clearly hear the man on the porch. It was raining and the windshield wipers were on. The car window was cracked open between two to six inches. No man is seen on the video tape either on the porch or in the yard. The door of the house, insofar as it can be seen, does not appear to be open. The photograph submitted as Defendant's exhibit #1 shows there is a tree on the berm in front of the house which may block some of the porch from a distance across the street (although Government Exhibit #A shows that a closer view would not be obstructed by the tree). The van is not visible in the videotape. It was extremely difficult to see anything and particularly to see the man on the porch or where he was pointing. In addition, the van was in motion as the officers stated. The officers made no investigation as to whether the man was pointing at the van, to a house across the street, to a person across the street or somewhere else. Instead, they concluded that the man was pointing at a van in motion toward the intersection of Maiden and Gunston, which van, according to their testimony, never stopped at that intersection, but drove straight through at an excessive rate of speed.

The Court finds the officers' testimony regarding the failure of the van to stop at the intersection not credible, given the weather conditions, the lack of light at that intersection and the fact that the officers had to look back to determine whether the van stopped at the intersection. The van was not in front and in full view of the officers when the traffic violation occurred. The officers had passed the intersection and they had to look back. Muczynski testified that after he looked back over his right shoulder, he saw that the van did not stop on Maiden. Engle testified that they had passed through Maiden when they saw the van in back disregard the stop sign on Maiden. Engle stated that they were past the bush in front of the house on the southwest corner when they heard what the person had said about the gun and that is when both she and her partner looked back. It is possible the van had already stopped prior to the officers looking back at the intersection. Other witnesses testified that the van stopped at the stop sign. Because the Court finds the officers did not have probable cause to believe that a traffic violation had occurred or was occurring, the resulting stop was unlawful and violates the Fourth Amendment.

  The only remaining reason for the stop then is the anonymous tip from a man on a dark porch yelling and pointing, about someone with a gun. The officers did not investigate the tip, although they had the opportunity to do so because the man was in the vicinity. A stop based solely on a non-predictive anonymous tip is unlawful. *See, White,* 496 U.S. at 329 and *J.L.,* 529 U.S. at 270-71. Moreover, given the totality of the circumstances, after having heard the testimony and reviewed the videotape, the Court finds that it is not reasonable that the officers could hear a man yelling from the porch and conclude that the man (if any) on the porch was pointing to a man in the van in motion on Maiden and Gunston. It is of no moment that ultimately there was a man with a gun in the van, especially given the officers' testimonies that the entire Ninth Precinct, where this incident occurred

is a "high crime area."

The fruit of the poisonous tree doctrine has long excluded evidence recovered as a result of an unlawful seizure. *Segura v. United States,* 468 U.S. 796, 804 (1984); *Wong Sun v. United States,* 371 U.S. 471, 484-85 (1963).  As such, the Court finds, given the totality of the circumstances, that there was no reasonable suspicion and certainly no probable cause for the officers in this case to have stopped the van or detained the occupants thereof, either for a gun violation or for a traffic stop. The gun and drugs found on the Defendant are suppressed. The statements made by the Defendant are also suppressed as the Court finds it highly improbable that the officer would have forgotten to include an admission of a defendant in his police report.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Suppress and for An Evidentiary Hearing **(Docket No. 14, filed January 4, 2005)** is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Discovery, Notice of 404(B) Evidence, Brady Materials and Additional Time **(Docket No. 10, filed November 29, 2004)** is MOOT.

   /s/ DENISE PAGE HOOD
DENISE PAGE HOOD
DATED: May 9, 2005                                    United States District Judge